[Cite as *State v. Wiley*, 2014-Ohio-5766.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0067** |
| JAIMIE R. WILEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division.
Case No. R 2012 CRB 1944.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Neil P. Agarwal*, 3766 Fishcreek Road, Suite 289, Stow, OH 44224-4379 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Jaimie R. Wiley, appeals the judgment of the Portage County Municipal Court, Ravenna Division, finding her guilty of R.C. 2921.33, resisting arrest, a misdemeanor of the second degree. Based on the following, we affirm the trial court's judgment.

{¶2} Deputy Leonard Vella of the Portage County Sheriff's Office responded to a call at Countryside Estates, Lot 82, a trailer park located in Portage County. When

Deputy Vella arrived at Lot 82, no one was there; however, appellant was directly across the road at Lot 66. Appellant was accompanied by neighbor Julie Hutson and her friend, Robert Grove. Appellant advised Deputy Vella that while she was at Ms. Hutson's home, the park manager, Toni, and Toni's husband drove by in a white vehicle and called appellant "a fat bitch." Behind the vehicle was the park manager's daughter, Megan, who called appellant "a bitch." There were no witnesses to this incident. Notably, Deputy Vella had previously visited the trailer park that same day regarding an incident between appellant and Toni.

{¶3} Deputy Vella asked appellant to make a written statement regarding the incident before he questioned Toni, her husband, and Megan. Appellant stated that she wished to make such a statement. Deputy Vella testified that it took appellant approximately one-half hour to complete her written statement. During this time, appellant repeatedly swore at Deputy Vella; called Deputy Vella "an asshole"; and was very hostile and agitated, which increased throughout his contact with appellant. At one point, appellant told Deputy Vella to stay the "F" away from her. This encounter was audio recorded, which was admitted into evidence.

{¶4} Deputy Vella testified that when he informed appellant she was under arrest for disorderly conduct, appellant behaved in the following manner:

> She refused to give us her hands. We tried to physically get her hands behind her back. She clenched her fists and tensed and kept them in front of her so we couldn't get her. And then when we tried to get her hands behind her back she started to turn towards us and we started to spin, kind of walk around the porch a little bit, and then she was escorted to the ground to effect the arrest.

{¶5} Ms. Hutson testified that when appellant was notified she was under arrest for disorderly conduct, appellant did not comply with the deputies, but struggled and

2

swore at them. Ms. Huston described appellant's behavior as, "just fighting, just resisting, fighting * * * giving them a very rough time just to put a set of cuffs on her hands."

{¶6} Deputy Vella testified that appellant was placed under arrest for disorderly conduct because, from the point of initial contact, appellant was agitated; appellant continuously swore and yelled. Appellant was noncompliant toward Deputy Vella. The incident occurred in a roadway located in the trailer park and in the presence of the two neighbors, Ms. Hutson and Mr. Grove. Deputy Vella, on multiple occasions, warned appellant to cease her behavior, but appellant continued to yell and swear.

{¶7} Appellant was charged with disorderly conduct and resisting arrest. After a bench trial, appellant was found not guilty of disorderly conduct but guilty of resisting arrest. Appellant was ordered to pay a $150 fine and sentenced to 90 days in jail, with 90 days suspended on the condition that appellant continue counseling. Appellant was also placed on supervised probation for nine months. Execution of sentence was stayed pending appeal.

{¶8} On appeal, appellant asserts the following as her first assignment of error:

{¶9} "The Appellate Court lacks jurisdiction to hear the appeal due to the fact that there is no final, appealable order under Crim.R. 32(C) and R.C. 2505.02."

{¶10} Appellant argues this court lacks jurisdiction due to a lack of a final, appealable order, as the May 24, 2013 sentencing order did not specify the violation for which appellant was convicted.

{¶11} This court, in a July 18, 2014 judgment entry, remanded the matter and instructed the trial court to issue a single sentencing entry that conforms with the

3

provision set forth in *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, ¶14, containing both "the fact of the conviction" and the sentence. The trial court complied with this directive and issued a nunc pro tunc judgment entry on July 28, 2014. Consequently, the trial court's July 28, 2014 judgment entry has rendered appellant's first assignment of error moot.

**{¶12}** Appellant's first assignment of error is moot.

**{¶13}** As appellant's second assignment of error, she alleges:

**{¶14}** "The Trial Court committed reversible and plain error in finding that Wiley was being lawfully arrested after finding that there was probable cause to arrest Wiley for disorderly conduct."

**{¶15}** Appellant was convicted for resisting arrest. R.C. 2921.33(A) states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." On appeal, appellant maintains that she could not be found guilty of resisting arrest because her arrest for disorderly conduct was not a lawful arrest.

**{¶16}** "'In order to prove a lawful arrest, * * * the State must prove both "that there was a reasonable basis to believe that an offense was committed, (and) that the offense was one for which the defendant could be lawfully arrested."'" *State v. Ellis*, 2d Dist. Montgomery No. 24003, 2011-Ohio-2967, ¶25, quoting *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶29.

**{¶17}** R.C. 2917.11(A), disorderly conduct, states:

> No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior; (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person; (3)

4

Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response; (4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender; (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

{¶18} Although appellant was charged under subsection (2), for purposes of determining whether probable cause existed to arrest her, we believe it is appropriate to review all of the potential subsections that support a probable cause finding. Pursuant to R.C. 2917.11(E)(3)(a), "[d]isorderly conduct is a misdemeanor of the fourth degree if * * * [t]he offender persists in disorderly conduct after reasonable warning or request to desist."

{¶19} [A] 'lawful arrest' for disorderly conduct occurs regardless of whether the alleged offender is ultimately convicted if the officer had reasonable grounds to believe that the accused was recklessly causing inconvenience, annoyance or alarm to him by abusive language, and that the individual's language and conduct was likely to provoke a violent response. * * * [T]he test is objective and [ ] the officer need not in fact be inconvenienced, annoyed or alarmed, or personally provoked to a violent response.

State v. Sansalone, 71 Ohio App.3d 284, 286 (1st Dist.1991). "The question, instead, focuses on whether, under the circumstances, it is probable that a reasonable police officer would find the accused's language and conduct annoying or alarming and would be provoked to want to respond violently." Id.

{¶20} Therefore, this court must determine whether Deputy Vella had probable cause or a reasonable basis to believe that appellant had committed disorderly conduct.

{¶21} Appellant argues that her words used at the scene of the incident did not rise to a level to establish any of the elements of R.C. 2917.11(A). Appellant argues the audio recording of the incident demonstrates that "every incident of profanity that [she] used was in reference to what others were saying." Appellant maintains that she "never tried to instigate a fight with Deputy Vella or try to provoke him into getting into a physical confrontation."

{¶22} "Punishment for disorderly conduct based on spoken words is prohibited unless those words amount to 'fighting words.'" *Middletown v. Carpenter*, 12th Dist. Butler No. CA2006-1-004, 2006-Ohio-3625, ¶14, citing *State v. Hoffman*, 57 Ohio St.2d 129, 133 (1979) and *State v. Wood*, 112 Ohio App.3d 621, 627 (1996). "'Fighting words' are those words that are likely by their very utterance to inflict injury or to incite an immediate breach of the peace. In determining whether language rises to the level of 'fighting words,' courts look at the circumstances surrounding the words." (Citations omitted.) *Carpenter* at ¶14.

{¶23} Here, the testimony of Deputy Vella, which is corroborated by the audio tape, demonstrates that appellant was extremely agitated at the scene of the incident. The incident occurred on a roadway in a trailer park in a common area. Although it was appellant's desire to complete an incident report, she repeatedly failed to comply with Deputy Vella's lawful requests. Instead, she yelled, cursed, and continued to raise her voice to a point where residents of the trailer park could hear her shouting. On a few occasions, Deputy Vella instructed appellant's son to stand away from the scene of this incident to calm appellant's agitation; however, appellant defied Deputy Vella's request and instructed her son to come back over to where she was standing. Further, despite

6

appellant's contentions otherwise, she did indeed call Deputy Vella an "asshole." The record demonstrates that Deputy Vella, on numerous occasions, warned appellant that she was going to be placed under arrest for disorderly conduct. Appellant, however, continued this course of behavior, including her statement to Deputy Vella to "stay the 'F' away from [her]."

{¶24} At oral argument, appellant argued that she was improperly arrested because Deputy Vella based her arrest for disorderly conduct on a prior incident regarding appellant and Toni. Appellant cites to the audiotape of the incident where Deputy Vella refers to the prior incident. We acknowledge that the officers had been to the trailer earlier that day regarding an incident between appellant and Toni and that Deputy Vella testified that appellant exhibited disorderly conduct at this previous incident. *See State v. Brown*, 11th Dist. Lake No. 2006-L-040, 2007-Ohio-464, ¶34 ("it is the collective knowledge of the law-enforcement officers that allows the arresting officer to rely upon those facts to effect an arrest"). Yet, the testimony indicates that when questioned as to why appellant was placed under arrest for disorderly conduct, Deputy Vella focused primarily on the incident at issue, citing the aforementioned facts.

{¶25} Under this set of circumstances, the deputy clearly had probable cause to arrest appellant for violating one or more subsections of R.C. 2917.11(A). To hold otherwise would suggest that the deputy must wait for the situation to get further out of control and risk physical harm to persons or property. Appellant's continued refusal to comply with the deputy's reasonable request in this potentially volatile environment was inexcusable and served no "lawful or reasonable purpose."

{¶26} Based on the foregoing, appellant's second assignment of error is without merit.

{¶27} Appellant's third assignment of error alleges:

{¶28} "The Trial Court committed reversible error in assessing a fine without any regard to Wiley's ability to pay said fine."

{¶29} Appellant argues that R.C. 2929.19(B)(5) requires the trial court to consider the offender's ability to pay before imposing a fine. It is clear, however, that R.C. 2929.19 applies to the imposition of sentence in felony cases. Section A states, with emphasis added:

> The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a *felony* and before resentencing an offender who was convicted of or pleaded guilty to a *felony* and whose case was remanded pursuant to section 2953.07 or 2953.08 of the Revised Code. * * *

{¶30} R.C. 2929.19(B)(5) states: "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." However, R.C. 2929.18 applies to a "court imposing a sentence upon an offender for a felony," and R.C. 2929.32 applies to the imposition of *additional* fines under certain circumstances, none of which apply here.

{¶31} R.C. 2929.22 governs the imposition of sentence for a misdemeanor. Appellant did not object or otherwise address the trial court with respect to the imposition of her fine. Former R.C. 2929.22(E) and (F) provided:

> (E) The court shall not impose a fine in addition to imprisonment for a misdemeanor, unless a fine is specially adapted to deterrence of the offense or the correction of the offender, the offense has

8

proximately resulted in physical harm to the person or property of another, or the offense was committed for hire or for purpose of gain.

(F) The court shall not impose a fine or fines which, in the aggregate and to the extent not suspended by the court, exceeds the amount which the offender is or will be able to pay by the method and within the time allowed without undue hardship to himself or his dependents, or will prevent him from making restitution or reparation to the victim of his offense.

{¶32} These sections have been removed from the current version of the statute, and thus do not apply to appellant's conviction. Appellant has failed to direct us to any statutory provision that would place an obligation on the trial court, as appellant suggests, when imposing a fine for a misdemeanor. There is no requirement in R.C. 2929.22 that the trial court make any affirmative finding on the record with regard to any of the considerations set forth in that section.

{¶33} Appellant's third assignment of error is without merit.

{¶34} Based on the opinion of this court, the judgment of the Portage County Municipal Court, Ravenna Division, is hereby affirmed.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.