THE STATE OF OHIO, APPELLANT, *v.* KEENAN, APPELLEE.

[Cite as *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484.]

(No. 2013–1731—Submitted September 9, 2014—Decided June 25, 2015.)

PFEIFER, J.

## BACKGROUND

{¶ 1} Appellee, Thomas M. Keenan, was found guilty of murdering Anthony Klann and was sentenced to death. 8th Dist. Cuyahoga No. 57565, 1990 WL 212119, *5, 7 (Dec. 27, 1990). This court reversed the conviction. 66 Ohio St.3d 402, 613 N.E.2d 203 (1993). Following a second trial, at which Keenan was convicted, the court of appeals affirmed Keenan's conviction and death sentence. 8th Dist. Cuyahoga No. 67452, 1996 WL 476437 (Aug. 22, 1996). This court also affirmed the conviction and sentence of death. 81 Ohio St.3d 133, 136, 689 N.E.2d 929 (1998).

{¶ 2} Ultimately, after "a long and complex history," the United States District Court for the Northern District of Ohio granted a writ of habeas corpus. *Keenan v. Bagley*, N.D.Ohio No. 1:10 CV 2139, 2012 WL 1424751, *3, 85 (Apr. 24, 2012). The court found that "Keenan was denied the right to due process pursuant to the Fourteenth Amendment as interpreted in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which forbids the prosecution from suppressing material information that is favorable to an accused." *Id.* at *85. The court ordered the state of Ohio to either "set aside Keenan's conviction for aggravated murder and [the attendant] death sentence" or "conduct another trial within 180 days" of the effective date of the court's order. *Id.*

{¶ 3} New proceedings commenced in the trial court on June 7, 2012. Keenan filed a motion to dismiss, and on September 6, 2012, the trial court granted the motion, stating, "In light of the State's egregious prosecutorial misconduct and the *Brady* violations in Keenan's prior two trials, Keenan cannot receive the fair and Constitutional trial that he is entitled to today." The judge also stated that although he had "an obligation to impose the least severe sanction that is

consistent with the purposes of the rules of discovery," he found that "Keenan's case is the unique and extraordinary case where the prejudice created cannot be cured by a new trial." The court dismissed the case with prejudice.

{¶ 4} The court of appeals affirmed, concluding that "we cannot state that the trial court's decision to grant Keenan's motion to dismiss the indictment with prejudice was so arbitrary, unreasonable, or unconscionable as to be an abuse of the trial court's discretion." 2013-Ohio-4029, 998 N.E.2d 837, ¶ 38 (8th Dist.).

{¶ 5} We granted the state's discretionary appeal. 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1215.

## ANALYSIS

{¶ 6} If anything, the district court's assessment of the history of this case as "long and complex" is something of an understatement. By our count, at least 40 judicial decisions have been rendered in this case since the original murder conviction in 1989. Nevertheless, more are in the offing. We conclude that whether it is possible for Keenan to receive a fair trial remains to be seen and that the trial court's decision to dismiss the case with prejudice was premature and, therefore, not justified. We remand to the trial court with instructions to proceed to trial.

{¶ 7} As did the court of appeals, we review the trial court's decision under an abuse-of-discretion standard. *See State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33, citing *State v. Parson,* 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *Id.* at ¶ 34, citing *State v. Adams,* 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶ 8} The issue in this case is not whether Keenan's rights have been violated—they have been, and that is why the district court granted the writ of habeas corpus. The issue is whether, given those violations, it is possible for Keenan to receive a fair trial. Obviously, this is a highly subjective determination, requiring the analysis of a voluminous record with appropriate adjustments for the absence of certain key witnesses who are now unavailable because they have died.

{¶ 9} "Without first giving the parties the opportunity to develop the record," *Darmond* at ¶ 39, the trial court determined that it is impossible for Keenan to receive a fair trial. We consider that an abuse of discretion. Although it may not be possible for Keenan to receive a fair trial, it is impossible for us to reach that determination at this time.

{¶ 10} At oral argument, Keenan argued persuasively that the absence of Edward Espinoza (among others) as a witness will be detrimental to his efforts to

defend himself. We do not doubt that this is true. The United States Supreme Court stated long ago in a case involving murder and deceased witnesses that

> [t]he fact that one party has lost the power of contradicting his adversary's witness is really no greater hardship to him than the fact that his adversary has lost the opportunity of recalling his witness and explaining his testimony would be to him. There is quite as much danger of doing injustice to one party by admitting such testimony as to the other by excluding it.

*Mattox v. United States*, 156 U.S. 237, 250, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

{¶ 11} That something is hard to do does not mean that it is unconstitutional. We understand that Keenan will have difficulties based on the passage of time, deceased witnesses, decreased memories, and so forth. But so will the state; for example, the late Mr. Espinoza was the state's sole source of direct eyewitness testimony about Klann's murder. In the event that these difficulties render it impossible for Keenan to defend himself, the trial court can at that time determine that a fair trial is not possible. But that day, if it comes, is in the future—at a minimum, after it is determined whether the state is able to establish its case in chief.

{¶ 12} In so holding, we reject the state's argument that because the *Brady* violations led to the granting of the writ of habeas corpus, they cannot also serve as the basis of a dismissal with prejudice. It is possible for a *Brady* violation (or other type of discovery abuse) to be so severe, so detrimental to the interests of justice that it can be the basis for the granting of a great writ and for the subsequent granting of a motion for dismissal.

{¶ 13} We conclude that the trial court acted unreasonably, unconscionably, and arbitrarily when it found that it was impossible for Keenan to receive a fair trial, without first giving the parties the opportunity to develop the record. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court with instructions for it to proceed to trial.

Judgment reversed,
and cause remanded.

O'CONNOR, C.J., and HENSAL and KENNEDY, JJ., concur.

PFEIFER, J., concurs separately.

LANZINGER, FRENCH, and O'NEILL, JJ., dissent.

JENNIFER L. HENSAL, J., of the Ninth Appellate District, sitting for O'DONNELL, J.

---

**PFEIFER, J., concurring separately.**

{¶ 14} Although I authored the majority opinion in this case, I write separately to emphasize that this case underscores one reason that the death penalty should be abolished. Over 17 years ago, this court affirmed the sentence of death in this case; I concurred in that decision. 81 Ohio St.3d 133, 136, 156, 689 N.E.2d 929 (1998). It is possible that Keenan could have been executed before it became known that the prosecution had suppressed exculpatory evidence. It would be an unspeakable travesty if the great state of Ohio were to execute a defendant and then determine that it had done so based on deliberate prosecutorial misconduct.

{¶ 15} The system worked in this case, in that Keenan now has access to information that should have been made available to him years ago. That is encouraging, but it is not a guarantee that the system will work in every instance or that it will always work in time. In this case, because Keenan has not been executed, there is still time for justice to be rendered appropriately. If he had been executed, there would have been no way for the state to cleanse itself from the awful reality of having executed a person who had not received his full measure of legal protection. To ensure that that never happens, the General Assembly should abolish the death penalty.

**FRENCH, J., dissenting.**

{¶ 16} As the majority aptly notes, it is an understatement to describe the history of this case as "long and complex." Majority opinion at ¶ 6. Almost 24 years after Anthony Klann's death, for which Thomas Keenan was convicted and sentenced to death, a federal court found that the state of Ohio's "serious and disturbing violations" of its constitutional obligation to produce all exculpatory information in its possession and its "continued * * * stonewall[ing] for nearly twenty years after" Keenan's trials violated Keenan's right to due process. *Keenan v. Bagley*, N.D.Ohio No. 1:01 CV 2139, 2012 WL 1424751, *45 (Apr. 24, 2012). As a result, the federal district court issued a writ of habeas corpus and ordered the state to either set aside Keenan's conviction and death sentence or conduct a new trial within 180 days. *Id.* at *85. The state elected to retry Keenan.

{¶ 17} Back in the trial court, Keenan moved for a dismissal with prejudice pursuant to Crim.R. 16, Crim.R. 48(B), the court's inherent power, and the due-process and/or double-jeopardy provisions of the Ohio and United States Consti-

tutions. The trial court relied on Crim.R. 16(L)(1), Crim.R. 48(B), and *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, 2006 WL 60778, to grant Keenan's motion. It stated, "In light of the State's egregious prosecutorial misconduct" and violations of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in Keenan's prior trials, "Keenan cannot receive the fair and Constitutional trial that he is entitled to today."

{¶ 18} The state appealed, arguing that the trial court lacked authority to dismiss Keenan's indictment because the federal district court had already sanctioned the state for its discovery violations by issuing the writ of habeas corpus, that the trial court failed to consider a less severe sanction, and that Keenan failed to demonstrate prejudice. The Eighth District rejected these contentions, found no abuse of discretion in the trial court's dismissal of the indictment, and affirmed. *State v. Keenan*, 2013-Ohio-4029, 998 N.E.2d 837, ¶ 13, 31, 37–38 (8th Dist.).

{¶ 19} This court accepted the state's jurisdictional appeal to address two propositions of law. 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1215. The state first asks this court to hold that for a violation of Crim.R. 16, a trial court must impose the least severe sanction consistent with the purpose of the criminal discovery rules and that a court may not impose multiple sanctions for the same discovery violation. The state also asks this court to hold that a trial court may not dismiss an indictment for lack of due process unless the defendant establishes prejudice.

{¶ 20} The majority opinion does not address either the Eighth District's analysis or the state's propositions of law. Instead, based solely on the unique facts of this case, the majority simply holds that the trial court could not determine whether Keenan could receive a fair trial—24 years after his alleged crime and after the death of the sole alleged eyewitness—without giving the parties the opportunity to further develop the record. Majority opinion at ¶ 9.

{¶ 21} Despite its acknowledgment that we must apply the deferential abuse-of-discretion standard, majority opinion at ¶ 7, the majority improperly second-guesses the trial court without any clear indication that the trial court's decision was unreasonable, unconscionable, or arbitrary. I respectfully dissent because the well-developed record, from which the trial court made extensive findings of fact and conclusions of law, provides a sufficient basis for the reasonable determination that " 'the harm done to * * * Keenan has been so egregious that this is the extraordinary case where the court has no other option' " but to dismiss the indictment with prejudice. *See* 2013-Ohio-4029, 998 N.E.2d 837, at ¶ 11, quoting the trial court's order.

{¶ 22} Crim.R. 16 is intended "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the

integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). Crim.R. 16(L)(1) authorizes a trial court to make orders regulating discovery that are consistent with Crim.R. 16. A trial court may dismiss a criminal case with prejudice for a violation of Crim.R. 16 where it "determines that a lesser sanction would not be consistent with the purposes of the criminal discovery rules." *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 41.

{¶ 23} When deciding whether to impose a sanction for a discovery violation, a trial court " 'must inquire into the circumstances surrounding [the] violation and * * * must impose the least severe sanction that is consistent with the purpose of the rules of discovery.' " *Id.* at syllabus, quoting *Lakewood v. Papadelis,* 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus. Both the trial court and the Eighth District acknowledged the obligation to impose the least severe sanction consistent with the discovery rules, but the state argues that the trial court nevertheless should have imposed a lesser sanction.

{¶ 24} In addressing Keenan's motion to dismiss, the trial court applied the three-pronged analysis outlined in *State v. Parson,* 6 Ohio St.3d 442, 453 N.E.2d 689 (1983). *Parson* counsels that, in formulating and imposing a sanction for a discovery violation, a judge should consider (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in preparing a defense, and (3) whether the accused was prejudiced. *See id.* at syllabus.

{¶ 25} The trial court found all three *Parson* factors satisfied. The trial court first stated, "[I]t is without question * * * that the State willfully withheld exculpatory evidence from Keenan and his attorneys." It next found that knowledge of the withheld information "would have clearly benefited" Keenan's defense. Consistent with the federal district court's findings in Keenan's habeas proceedings, the trial court found that the withheld information could have established that someone else had a motive for Klann's murder, could have cast doubt on the state's theory of the case, and could have had "significant impeachment value." Finally, the trial court expressly found that Keenan was severely prejudiced as a result of the state's failure to disclose the exculpatory information:

> Keenan's case is now 24 years removed from the crime. The witnesses would have to testify to detailed issues that took place that long ago, including the date and time of this alleged murder which have never been decisively established.
>
> The only alleged eyewitness, Edward Espinoza, is deceased. And his testimony is not admissible because he was never able to be cross-

examined with the newly-discovered exculpatory material. Additionally, Keenan was never able to use the exculpatory evidence to impeach Espinoza.

Other witnesses of importance are also deceased including Detective Timothy Horval, Lee Oliver, Angelo Crimi, and James Russell. None of whom have been able to be cross-examined or confronted with the exculpatory evidence.

The majority opinion offers no explanation why the trial court could not reasonably make its findings of fact and conclusions of law based upon the record before it.

{¶ 26} The majority cites *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, in support of its conclusion that the trial court abused its discretion by not affording the parties an opportunity to develop the record before ruling on Keenan's motion to dismiss. But in *Darmond*, application of the *Parson* factors was unclear: the state's discovery violation was unintentional, the trial court could not ascertain whether the undisclosed information was exculpatory or inculpatory, and it was not clear that the defense would have benefited from foreknowledge of the information or that the defense was prejudiced. *Id.* at ¶ 37. In stark contrast to *Darmond*, the exculpatory nature of the undisclosed information here and the detrimental effect on Keenan's defense are clear. Unlike in *Darmond*, further development of the record is unnecessary.

{¶ 27} The trial court's determination, based upon the record before it, that Keenan could not receive a fair and constitutional trial was not unreasonable, unconscionable, or arbitrary. Further, contrary to the state's argument, the trial court did not fail to consider less severe sanctions before dismissing Keenan's indictment with prejudice. The trial court had already held that Espinoza's prior testimony would not be admissible on retrial because the state's withholding of the exculpatory evidence, coupled with Espinoza's death, precluded Keenan from impeaching Espinoza or cross-examining him with respect to the exculpatory evidence. In its findings of facts and conclusions of law, the trial court expressly noted the inadmissibility of Espinoza's prior testimony. Nevertheless, the court concluded that Keenan could not be fairly and constitutionally retried. In making that determination, the trial court viewed the circumstances as they existed at the time of its ruling and considered the evidence that would be admissible in a new trial. Although it did not expressly address specific alternative sanctions, implicit in the trial court's findings and its dismissal of the indictment is the conclusion that less severe sanctions, including the exclusion of Espinoza's testimony, would not suffice to render a retrial fair. Nothing more is required.

{¶ 28} The state's second proposition of law concerns the standard for dismissing a criminal case for a violation of due process and states that dismissal is unwarranted unless the defendant establishes actual prejudice. The state contends that Keenan's motion to dismiss, with its argument that he cannot be fairly retried due to the passage of time and the unavailability of witnesses, implicates due-process concerns.

{¶ 29} The state argues that a court may not presume prejudice based on the passage of time or vague allegations of faded memories. *See State v. Cochenour*, 4th Dist. Ross No. 98CA2440, 1999 WL 152127, *1 (Mar. 8, 1999) (addressing preindictment delay); *State v. Glasper*, 2d Dist. Montgomery No. 15740, 1997 WL 71818, *4 (Feb. 21, 1997) (same). While vague allegations of witnesses' faded memories may indeed be insufficient to establish prejudice, the prejudice suffered by Keenan is based on far more. In particular, Espinoza—the state's key witness and the only alleged eyewitness to the crime—is deceased. That Espinoza's prior testimony would not be admissible in a new trial does not eliminate the prejudice that Keenan suffered as a result of not being able to confront Espinoza with the exculpatory evidence that the state egregiously concealed for more than 20 years. Furthermore, at least four other witnesses, whom Keenan was unable to confront with the withheld evidence, are also deceased. Finally, even if they are not independently sufficient to establish prejudice, the trial court appropriately noted several additional factors that contribute to the prejudice Keenan would suffer if retried in this case, including the extraordinary length of time that has elapsed since the underlying events and the importance of particular details in this case that have never been decisively established, such as the date and time of the alleged murder.

{¶ 30} The trial court also had the benefit of the federal district court's discussion of prejudice in Keenan's habeas proceedings. After noting the difficulty of establishing prejudice under *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the district court found that Keenan could have used the withheld information to "significantly strengthen his case" and weaken the state's case and that there was a reasonable probability that the suppressed evidence would have produced a different verdict. N.D.Ohio No. 1:01 CV 2139, 2012 WL 1424751, at *45. The district court explained:

> [T]he State had only one witness to the murder—Espinoza, an accomplice who testified in return for a reduced charge and sentence—and no physical evidence at all. Espinoza's testimony, moreover, was rife with inconsistencies and contradicted numerous witnesses on key points. And the jury already knew that he was cooperating with the prosecution. Given these inherent weaknesses in the State's case, then, this Court concludes that

the questions raised by the suppressed evidence, about Espinoza's credibility and role in the murder; about the thoroughness and integrity of the police investigation; and [another person's] motive to kill Klann, are sufficient to undermine confidence in the outcome of Keenan's trial.

(Footnotes omitted.) *Id.*

{¶ 31} The Eighth District was tasked with determining whether the trial court abused its discretion in dismissing Keenan's indictment, and there is no basis for concluding that the trial court could not have reasonably reached the same conclusions with respect to prejudice as the federal district court did in Keenan's habeas proceedings. In light of the extensive record before the trial court, the egregious misconduct of the prosecution, and the trial court's detailed findings of facts and conclusions of law, I cannot conclude that the trial court acted unreasonably, unconscionably, or arbitrarily in determining that Keenan could not be afforded a fair trial and in dismissing Keenan's indictment with prejudice. Accordingly, I respectfully dissent and would affirm the court of appeals' judgment.

LANZINGER and O'NEILL, JJ., concur in the foregoing opinion.

---

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney, for appellant.

Timothy F. Sweeney, for appellee.